UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JENNIFER KITZEL,

    Plaintiff,

v.                        Case No. 8:22-cv-2733-VMC-AAS

TUNNELL GOVERNMENT
SERVICES INC.,

    Defendant.
_____/

**ORDER**

    This matter comes before the Court upon consideration of Defendant Tunnell Government Services Inc.'s Motion to Dismiss for Improper Venue (Doc. # 17), filed on January 23, 2023. Plaintiff Jennifer Kitzel responded on February 13, 2023. (Doc. # 20). With leave, Tunnell replied on February 24, 2023. (Doc. # 23). For the reasons that follow, the Motion is denied.

**I.**    **Background**

    **A.**    **Allegations in the Amended Complaint**

    Tunnell, which is a Maryland corporation, "provides government agencies, including the U.S. Food and Drug Administration ('FDA') with professionals to assist those agencies in meeting their missions." (Doc. # 13 at 1). "In September 2021, a Senior Recruiter on Tunnell's talent

1

acquisition team reached out to Dr. Kitzel while she was in and residing in Florida about a job opportunity with Tunnell." (Id.). "On December 13, 2021, Tunnell hired Dr. Kitzel as a Subject Matter Expert assigned to assist the FDA with various issues, including a project titled SHIELD, which was a multi-agency initiative for laboratory interoperability. After Tunnell hired Dr. Kitzel, it sent a computer to her home in Florida that she could use as part of her employment." (Id.).

"In her role as a Subject Matter Expert, Tunnell required Dr. Kitzel to track and report her time worked to Tunnell. Tunnell then billed the FDA for Dr. Kitzel's time and earned a profit from the time that she spent working in Florida." (Id. at 2). A Tunnell employee, Dr. Campbell, directed Dr. Kitzel to also work on Dr. Campbell's personal Solar project. (Id.). Although the Solar project was not an FDA project, Dr. Campbell allegedly directed Dr. Kitzel to bill her time spent on the Solar project to the FDA. (Id.).

"On August 2, 2022, Dr. Kitzel sent an email to Mr. Josh Fine, her manager at Tunnell, with a series of complaints related to Campbell's improper use of federal resources and funds on his personal Solar project." (Id. at 3). Then, "on September 26, 2022, the month after she complained about

Campbell's improper use of federal funds, Tunnell terminated Dr. Kitzel's employment." (<u>Id.</u>).

Kitzel initiated this action against Tunnell on December 1, 2022. (Doc. # 1). She later filed an amended complaint, asserting claims for retaliation under the False Claims Act ("FCA"), 31 U.S.C. § 3730(h) (Count I) and Florida's Private Whistleblower Act (Count II). (Doc. # 13). According to the amended complaint, "[v]enue lies within the United States District Court for the Middle District of Florida, Tampa Division, in accordance with 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this claim occurred in this judicial district." (<u>Id.</u> at 1).

### B.   <u>Instant Motion and Declarations</u>

Now, Tunnell moves to dismiss the case for improper venue or, alternatively, to transfer the case to the United States District Court for the District of Maryland. (Doc. # 17). In support of its Motion, Tunnell attaches the declaration of its Senior Vice President Jerry D. Robinson. (Doc. # 17-1). In his declaration, Mr. Robinson avers that Tunnell, which is based in Bethesda, Maryland, "is a life sciences consulting firm that provides scientific and technical expertise to federal government clients in the Washington, D.C. region — meaning Washington, D.C., Maryland and Virginia." (<u>Id.</u> at ¶¶

1, 4, 10). These clients include the FDA, which is also based in Maryland. (Id.). According to Mr. Robinson, Tunnell "has no office or business location in the State of Florida," "has no clients or contracts in the State of Florida," and "does not conduct any business in the State of Florida." (Id. at ¶¶ 6-8).

Under its contract with the FDA, Tunnell agreed to provide expert consultants to work for the FDA as contractors, with some contractors "work[ing] remotely using FDA furnished property on the FDA network." (Id. at ¶¶ 9-11). Tunnell hired Dr. Kitzel "as an Informatic Subject Matter Expert (SME) to work in support of the FDA's Center for Devices and Radiological Health pursuant to TGS's contract." (Id. at ¶ 12). "Consistent with the Statement of Work, FDA GFE (government furnished equipment) is provided to [Tunnell] consultants, and the FDA sent Dr. Kitzel an FDA-issued computer for her use in working on the contract. The FDA has provided this equipment to all of [Tunnell's] consultants on the contract since July 2020." (Id. at ¶ 14). But due "to a supply issue with FDA computers when Dr. Kitzel started, [Tunnell] sent her a loaner computer for use until her FDA-issued computer arrived." (Id. at ¶ 15).

Furthermore, Mr. Robinson declares that "[i]n September 2022, at the request of the FDA contracting office, [Tunnell] removed Dr. Kitzel from the FDA contract to support the Center for Devices and Radiological Health and notified her of the removal." (Id. at ¶ 16). The Tunnell "employees involved in the removal are located in Maryland and Pennsylvania and were in those locations when Dr. Kitzel was removed." (Id. at ¶ 17).

Dr. Kitzel has responded to the Motion (Doc. # 20), and attaches her own declaration to her response. (Doc. # 20-1). Regarding this case's connection to Florida, Dr. Kitzel avers that Tunnell recruited her while she was living in Florida and, after it hired her, Tunnell sent her "a computer to [her] home in Hillsborough County, Florida for use as part of [her] employment." (Id. at ¶¶ 2-4). Tunnell "billed the FDA for the time that [Dr. Kitzel] spent providing services" and, thus, "knowingly earned income from the services that [she] performed from Hillsborough County, Florida." (Id. at ¶ 6). According to Dr. Kitzel, "Tunnell communicated with [her] routinely via telephone while [she] was in Hillsborough County, and [they] spoke more than 30 times during [their] business relationship." (Id. at ¶ 7). Tunnell also sent Dr. Kitzel "dozens of emails over that span." (Id.). "When [Dr.

Kitzel] complained to Tunnell of improper billing practices, and when Tunnell terminated [her] employment over the telephone, [Dr. Kitzel] was located in Hillsborough County, Florida." (<u>Id.</u> at ¶ 8).

Tunnell has also replied. (Doc. # 23). The Motion is ripe for review.

## II.  <u>Legal Standard</u>

### A.  <u>Rule 12(b)(3) and Section 1406(a)</u>

Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Federal Rule of Civil Procedure 12(b)(3) states that a party may move to dismiss a case for "improper venue." Fed. R. Civ. P. 12(b)(3). "These provisions therefore authorize dismissal only when venue is 'wrong' or 'improper' in the forum in which it was brought." <u>Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas</u>, 571 U.S. 49, 55 (2013).

"This question — whether venue is 'wrong' or 'improper' — is generally governed by 28 U.S.C. § 1391." <u>Id.</u> "That provision states that '[e]xcept as otherwise provided by *law* . . . this section *shall* govern the venue of *all civil*

6

*actions* brought in district courts of the United States.'" Id. (quoting § 1391(a)(1) (emphasis added)). But, as relevant here, the False Claims Act contains its own venue provision: "Any action under section 3730 may be brought in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred." 31 U.S.C. § 3732(a).

"When a defendant moves to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3), the plaintiff bears the burden of showing that the venue selected is proper." Worldwide Aircraft Servs., Inc. v. Anthem Ins. Companies, Inc., No. 8:21-cv-456-CEH-AAS, 2023 WL 1069811, at *2 (M.D. Fla. Jan. 27, 2023) (citing Delong Equip. Co. v. Wash. Mills Abrasive Co., 840 F.2d 843, 845 (11th Cir. 1988)). "While a court accepts all allegations of the complaint as true for purposes of a motion to dismiss, where venue allegations are contradicted by a defendant's affidavit, the court may examine facts outside of the complaint to determine whether venue is proper." Id. at *3.

**B.   Section 1404(a)**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil

action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

Ordinarily, "[t]o transfer an action under [S]ection 1404(a) the following criteria must be met: (1) the action could have been brought in the transferee district court; (2) a transfer serves the interest of justice; and (3) a transfer is in the convenience of the witnesses and parties." i9 Sports Corp. v. Cannova, No. 8:10-cv-803-VMC-TGW, 2010 WL 4595666, at *3 (M.D. Fla. Nov. 3, 2010)(citation omitted).

## III. **Analysis**

### A.   **Venue**

First, Tunnell argues that venue is improper in the Middle District of Florida because Tunnell does not reside or transact business in this District. (Doc. # 17 at 3-6). Rather, it argues that venue would be proper in the District of Maryland, where Tunnell is based. (Id. at 7). Thus, Tunnell seeks to dismiss this action for improper venue under Rule 12(b)(3) or transfer the case to the District of Maryland under Section 1406(a). (Id. at 1).

As an initial matter, the Court agrees with Tunnell that the FCA's venue provision applies to this action. Again, Section 3732 of the False Claims Act states: "Any action under

8

section 3730 may be brought in any judicial district in which [(1)] the defendant or, in the case of multiple defendants, any one defendant can be found, resides, [(2)] transacts business, or [(3)] in which any act proscribed by section 3729 occurred." 31 U.S.C. § 3732(a). Here, Dr. Kitzel's retaliation claim is brought under Section 3730(h), and she asserts no claims under Section 3729. Thus, the third prong of the False Claims Act's venue provision does not apply, and Dr. Kitzel does not dispute this. (Doc. # 17 at 6; Doc. # 20 at 2-3). As to the first prong, the parties also do not appear to dispute that Tunnell cannot be found nor resides in this District, given Tunnell's location in Bethesda, Maryland. (Doc. # 17 at 4; Doc. # 20 at 2-3).

That leaves the second prong, regarding whether Tunnell transacts business in this District. Tunnell argues that venue does not exist under the second prong of the venue provision. As declared by Tunnell's Senior Vice President, Mr. Robinson, Tunnell "has no office or business location in the State of Florida," "has no clients or contracts in the State of Florida," and "does not conduct any business in the State of Florida." (Doc. # 17-1 at ¶¶ 6-8). Rather, Tunnell is based in Maryland, and "provides scientific and technical expertise to federal government clients in the Washington,

D.C. region — meaning Washington, D.C., Maryland and Virginia — including" the FDA. (Id. at ¶¶ 4-5). Nevertheless, Mr. Robinson admits that Tunnell hired Dr. Kitzel to serve as a consultant to the FDA and that she worked from her home in Florida, where she used — at least for a time — a computer that Tunnell sent her. (Id. at ¶¶ 12, 15).

In response, Dr. Kitzel maintains that Tunnell did transact business in this District, starting with its "reach[ing] out to a qualified expert[] here for potential employment with Tunnell" and continuing through Dr. Kitzel's entire employment with Tunnell. (Doc. # 20 at 3-4). Dr. Kitzel emphasizes in her declaration that she was living in Florida when Tunnell recruited her and, after it hired her, Tunnell sent her "a computer to [her] home in Hillsborough County, Florida for use as part of [her] employment." (Doc. # 20-1 at ¶¶ 2-4). Tunnell "billed the FDA for the time that [Dr. Kitzel] spent providing services" and, thus, "knowingly earned income from the services that [she] performed from Hillsborough County, Florida." (Id. at ¶ 6). According to Dr. Kitzel, "Tunnell communicated with [her] routinely via telephone while [she] was in Hillsborough County, and [they] spoke more than 30 times during [their] business

10

relationship." (<u>Id.</u> at ¶ 7). Tunnell also sent Dr. Kitzel "dozens of emails over that span." (<u>Id.</u>).

The question before the Court is whether an employee's remote work in this District qualifies as Tunnell's having transacted business in this District for purposes of the FCA's venue provision. "A plaintiff satisfies the FCA's venue provision if it is alleged that a defendant entered into business agreements in the district or visited the district to work on business projects." <u>United States v. Hobbs</u>, No. 1:16CV236, 2018 WL 1368325, at *3 (N.D.W. Va. Mar. 16, 2018). One district court has opined that "the FCA's venue provision is broad enough to capture even such limited contact" as "merely entering contracts with counterparties in the [relevant district] and shipping goods to [that district]." <u>United States v. Get Eng'g Corp.</u>, No. 818CV00277JLSDFM, 2019 WL 4452968, at *2-3 (C.D. Cal. June 20, 2019). "Indeed, it is well-established that the words 'transacts business' in federal venue statutes cover even minimal commercial activity." <u>Id.</u> at *2; <u>see also</u> <u>Anchor Invs., LLC v. Urbana, LLC</u>, No. 07-81087-CIV, 2008 WL 11417288, at *2 (S.D. Fla. Feb. 19, 2008) ("While there is a dearth of case law interpreting the phrase 'transacts business' under § 1719 of [the Interstate Land Sale Full Disclosure Act], the

11

'transacts business' phrase appears in many jurisdiction granting statutes and has been thoroughly examined in those contexts on numerous occasions.").

In Eastman Kodak v. Southern Photo Materials Co., 273 U.S. 359, 372-73 (1927), the United States Supreme Court in construing the "transacting business" phrase in the Clayton Act's venue provision defined it as "the practical, every day business or commercial concept of doing or carrying on business 'of any substantial character.'" Id.; see also Amateur-Wholesale Elecs. v. R. L. Drake Co., 515 F. Supp. 580, 584 (S.D. Fla. 1981) ("[T]he general test for 'transacting business' [under the Clayton Act] is whether, viewed in the practical, everyday business concept of carrying on business, the defendant transacts business of a substantial character with the district.").

Thus, the Court must determine whether Tunnell, "viewed in the practical, everyday business concept of carrying on business, [] transact[ed] business of a substantial character" in this District by hiring Dr. Kitzel in this District to perform work in this District, for which Tunnell billed the FDA. Amateur-Wholesale Elecs., 515 F. Supp. at 584. The Court concludes that it did.

It is undisputed that, while Dr. Kitzel was in this District, Tunnell recruited Dr. Kitzel and subsequently hired her to work for Tunnell as a Subject Matter Expert to be assigned to the FDA. (Doc. # 13 at 2-3; Doc. # 17-1 at ¶ 12; Doc. # 20-1 at ¶¶ 2-3). It is likewise undisputed that Tunnell shipped a computer to this District for Dr. Kitzel to use to perform work in this District for some amount of time. (Doc. # 13 at 2; Doc. # 17-1 at ¶ 15; Doc. # 20-1 at ¶ 4). Notably, Tunnell billed for work performed by Dr. Kitzel in this District for the FDA for the approximately nine months of her employment. (Doc. # 13 at 3; Doc. # 20-1 at ¶¶ 5-6). The Court considers the recruitment and hiring of Dr. Kitzel in this District, the provision of a Tunnell computer to Dr. Kitzel in this District, and Tunnell's billing for Dr. Kitzel's work performed in this District to constitute transacting business in this District.

While the Court appreciates the complications that the increasing prevalence of remote work can cause in assessing venue, it is contrary to the FCA's venue provision to disregard Tunnell's business performed in this District through Dr. Kitzel's employment. Furthermore, the Court is not persuaded by the reasoning of the cases Tunnell cites in its reply regarding remote workers and venue, which are all

13

distinguishable. For example, the primary case on which Tunnell relies in its reply, C.R. Bard, Inc. v. Smiths Med. ASD, Inc., No. 212CV00036RJSDAO, 2020 WL 6710425 (D. Utah Nov. 16, 2020), dealt with the venue provision governing patent actions under which venue is proper where a defendant "has a regular and established place of business." Id. at *2 (quoting 28 U.S.C. § 1400(b)). This language differs from the more generalized "transacts business" requirement in the FCA's venue provision, which has been described as a "low bar." See Get Eng'g Corp., 2019 WL 4452968, at *3 ("This low bar 'does not demand that a corporation be engaged in a continuous course of business within the forum state. One act within, or with regard to, the forum state may be enough to constitute the "transaction of business" required' to confer venue." (citation omitted)).

In short, venue is proper in this District. Thus, dismissal or transfer for improper venue is inappropriate. But the Court will still address Tunnell's alternative argument that transfer is also appropriate under 28 U.S.C. § 1404(a).

   B.   **Transfer under Section 1404(a)**

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district

court may transfer any civil action to any other district or division where it might have been brought or to any district to which all parties have consented." 28 U.S.C. § 1404(a). Transfer is appropriate under Section 1404(a) only if the following criteria are met: "(1) the action could have been brought in the transferee district court; (2) a transfer serves the interest of justice; and (3) a transfer is in the convenience of the witnesses and parties." Tempur-Pedic N. Am., LLC v. Mattress Firm, Inc., No. 8:18-cv-2147-VMC-SPF, 2018 WL 8369104, at *3 (M.D. Fla. Sept. 20, 2018) (citation omitted). "Because federal courts ordinarily accord deference to a plaintiff's choice of forum, the burden is on the movant to show that the suggested forum is more convenient or that litigation there would be in the interest of justice." Solis v. Seibert, No. 8:09-cv-1726-VMC-AEP, 2010 WL 1408429, at *2 (M.D. Fla. Apr. 5, 2010) (citation omitted).

Here, it appears uncontested that the action could have been brought in the District of Maryland, given Tunnell's residence in Maryland. (Doc. # 17 at 8; Doc. # 20 at 5). Regarding the two other elements, the Eleventh Circuit has outlined the following factors to be considered:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative

> ease of access to sources of proof; (3) the
> convenience of the parties; (4) the locus of
> operative facts; (5) the availability of process to
> compel the attendance of unwilling witnesses; (6)
> the relative means of the parties; (7) a forum's
> familiarity with the governing law; (8) the weight
> accorded a plaintiff's choice of forum; and (9)
> trial efficiency and the interests of justice,
> based on the totality of the circumstances.

Testa v. Grossman, No. 5:15-cv-321-JSM-PRL, 2015 WL 6153743, at *2 (M.D. Fla. Oct. 19, 2015) (citing Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005)). "A basic principle under [Section] 1404(a) is that the plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media Inc., 761 F. Supp. 2d 1322, 1326 (M.D. Fla. 2010) (internal quotation marks and citation omitted).

At the end of its Motion, Tunnell alternatively requests that the Court transfer this case to Maryland under Section 1404(a). (Doc. # 17 at 9). However, Tunnell fails to provide any analysis regarding Section 1404(a). Rather, the Motion states: "For those same reasons [Tunnell argues transfer is proper under Section 1406(a)] and because [Tunnell] has no presence in Florida, if the Court were to conclude that venue in this District is proper, transfer to the District of

Maryland would be appropriate under 28 U.S.C. § 1404(a)."
(Doc. # 17 at 9). Thus, although Tunnell earlier raised
certain considerations regarding transfer under Section
1406(a), Tunnell failed to provide an analysis of the nine
factors the Court must weigh in deciding a motion for transfer
under Section 1404(a). Regardless, for the sake of
completeness, the Court will analyze the factors.

### 1.   Convenience of the Witnesses

"The most important factor in passing on a motion to
transfer under [Section] 1404(a) is the convenience of the
witnesses." Insuracorp, Inc. v. Am. Fid. Assur. Co., 914 F.
Supp. 504, 506 (M.D. Ala. 1996). "[T]he critical
determination . . . is the convenience of the forum to key
non-party witnesses on a defendant's liability." Weintraub v.
Advanced Corr. Healthcare, Inc., 161 F. Supp. 3d 1272, 1280
(N.D. Ga. 2015).

"The significance of this factor is diminished when the
witnesses, although in another district, are employees of a
party and their presence at trial can be obtained by that
party." SMA Portfolio Owner, LLC v. CPX Tampa Gateway OPAG,
LLC, No. 8:11-cv-1925-SDM-EAJ, 2014 WL 4791997, at *6 (M.D.
Fla. Sept. 22, 2014) (internal quotation marks and citation
omitted). For this reason, the Court ignores the convenience

of witnesses who are employees of Tunnell. See Delorenzo v. HP Enter. Servs., LLC, 79 F. Supp. 3d 1277, 1283 (M.D. Fla. 2015) ("Therefore, any employee of HP Enterprise . . . is ignored in considering this factor.").

Still, that leaves the witnesses who work for the FDA. Given Tunnell's representations, these witnesses will presumably testify as to who made the decision to terminate Dr. Kitzel's employment and why. (Doc. # 17 at 8; Doc. # 17-1 at ¶ 16). Thus, the anticipated FDA witnesses will be crucial regarding Tunnell's liability. This factor weighs in favor of transfer.

### 2.   Location of the Relevant Documents

The second "factor examines the location of sources of documentary proof and other tangible materials, and the ease with which the parties can transport them to trial." Trinity Christian, 761 F. Supp. 2d at 1327. Tunnell argues that "relevant documents . . . are located in the District of Maryland" because the contracting office of the FDA is in Maryland, as is Tunnell's office. (Doc. # 17 at 8).

However, this factor is less important because "[m]odern technology largely neutralizes traditional obstacles to providing relevant documents and access to proof." Watson v. Cmty. Educ. Ctrs., Inc., No. 2:10-cv-778-CEH-SPC, 2011 WL

18

3516150, at *5 (M.D. Fla. Aug. 11, 2011). This factor only slightly weighs in favor of transfer.

### 3.   **Convenience of the Parties**

As to the third factor, "[t]he logical starting point for analyzing the convenience of the parties is . . . their residences[.]" Delorenzo, 79 F. Supp. 3d at 1283 (internal quotation marks and citation omitted). Dr. Kitzel resides in this District, while Tunnell is based in the District of Maryland.

Because both parties reside in the respective districts, this factor is neutral. See Weintraub, 161 F. Supp. 3d at 1282 ("Accordingly, the Court finds that because there are advantages and disadvantages to either party depending on the venue, this factor does not weigh for or against transfer.").

### 4.   **Locus of Operative Facts**

"To determine the locus of operative facts, courts look to where the events from which the claim arises occurred." Clinton v. Sec. Benefit Life Ins. Co., No. 19-24803-CIV, 2020 WL 6120565, at *6 (S.D. Fla. June 29, 2020) (citation omitted), report and recommendation adopted, No. 19-24803-CIV, 2020 WL 6120554 (S.D. Fla. July 21, 2020). "When there are multiple loci of operative facts and no single

locus is primary in this respect, courts treat this factor as neutral in the Section 1404(a) analysis." Id.

While Tunnell argues that the decision to fire Dr. Kitzel was made in Maryland, Dr. Kitzel complained about the alleged fraudulent billing while working in this District. Thus, the most relevant events for this case occurred both in this District and the District of Maryland. This factor is neutral.

### 5.   Compulsory Process of Witnesses

Under Federal Rule of Civil Procedure 45, which governs the issuance of subpoenas in civil cases, a subpoena may command attendance "within 100 miles of where the person resides, is employed, or regularly transacts business in person" or "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is a party or a party's officer . . . or . . . is commanded to attend trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1). "This factor is relevant only if a party demonstrates, as a threshold matter, that a particular witness would otherwise be unwilling to testify at trial." Am. Navigation Sys., Inc. v. Samsung Elecs. Co., No. 8:14-cv-1131-CEH-MAP, 2014 WL 12701068, at *5 (M.D. Fla. Dec. 1, 2014).

20

Here, neither party has identified any witness that would be unwilling to testify in either district. "[A]s neither party has demonstrated the necessity of process to compel the attendance of any witness, this factor is neutral." Id.

### 6.   **Relative Means of the Parties**

Regarding the sixth factor, "the Court must consider the relative means of the parties in determining whether transfer furthers the interest of justice." Poertner v. Gillette Co., No. 6:12-cv-803-GAP-DAB, 2012 WL 12898875, at *3 (M.D. Fla. July 9, 2012). Here, Dr. Kitzel is an individual while Tunnell is a corporation with greater means. Thus, this factor weighs against transfer.

### 7.   **Familiarity with Governing Law**

"The forum's familiarity with governing law is one of the least important factors in determining a motion to transfer, especially where no complex questions of foreign law are involved." Harvard v. Inch, 408 F. Supp. 3d 1255, 1264-65 (N.D. Fla. 2019) (internal quotation marks and citation omitted).

This case involves claims under both federal and Florida law. There is no concern regarding the federal claim, as both this Court and judges in the District of Maryland are both at

home with federal law. Likewise, a court in the District of Maryland would be able to apply Florida law without difficulty. Cf. Mirasco, Inc. v. Ghaly, No. 1:17-cv-00289-SCJ, 2017 WL 4890540, at *4 (N.D. Ga. May 30, 2017) ("[T]o the extent that Georgia substantive law applies, both Georgia and California district courts are capable of applying such law."). Thus, this factor is neutral.

### 8.    Plaintiff's Choice of Forum

Generally, a plaintiff's choice of forum "must be given considerable weight." Sterling v. Provident Life & Accident Ins. Co., 519 F. Supp. 2d 1195, 1207 (M.D. Fla. 2007). Here, the Middle District of Florida is Dr. Kitzel's home forum. (Doc. # 13 at ¶ 3).

While Tunnell notes that Dr. Kitzel agreed to her employment offer letter's setting venue in the courts of Montgomery County, Pennsylvania (Doc. # 17 at 8 n.1), this does not alter the tilt of this factor. Indeed, Tunnell recognizes "that the state courts referenced in the signed employment offer letter would not have jurisdiction over [Dr. Kitzel's] federal FCA claim" and Tunnell does not seek transfer to a district court in Pennsylvania. (Id.). For that reason, the offer letter's designation of venue elsewhere

does not reduce the deference to be given to Dr. Kitzel's choice of forum in this District.

This factor weighs heavily against transfer.

### 9.   Trial Efficiency and the Interests of Justice

Lastly, the Court considers "the forum in which judicial resources could most efficiently be utilized and [the] place in which trial would be most easy, expeditious, and inexpensive." Garay v. BRK Elecs., 755 F. Supp. 1010, 1013 (M.D. Fla. 1991) (internal quotation marks and citation omitted). "To satisfy its burden, [Tunnell] must show that any purported gains in judicial efficiency will clearly outweigh [Dr. Kitzel's] choice." Intell. Ventures I, LLC v. Motorola Mobility, LLC, No. 13-61358-CIV, 2014 WL 129279, at *3 (S.D. Fla. Jan. 14, 2014) (emphasis and citation omitted). This Tunnell has not even attempted to do.

Therefore, this factor weighs against transfer.

### 10. Weighing the Factors

Here, two factors weigh in favor of transfer, including the most important factor of the convenience of witnesses. Three factors weigh against transfer, including the important factor of the plaintiff's choice of forum. The other four factors are neutral. Ultimately, while Tunnell understandably wishes to litigate in the District of Maryland where it and

non-party witnesses are primarily located, Tunnell has failed to carry its burden of establishing that these considerations outweigh Dr. Kitzel's choice of forum. The Court declines to transfer the case to the District of Maryland.

IV.   **Conclusion**

Venue is proper in this District; thus, Tunnell's Motion to Dismiss for Improper Venue is denied. Furthermore, the Court declines to transfer this case to the District of Maryland under 28 U.S.C. § 1404(a).

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Defendant Tunnell Government Services Inc.'s Motion to Dismiss for Improper Venue (Doc. # 17) is **DENIED.**

(2)   Tunnell's answer to the amended complaint is due fourteen days from the date of this Order.

(3)   The parties are directed to file their completed Case Management Report within seven days of the date of this Order. Discovery is no longer stayed.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 2nd day of March, 2023.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE